UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| COLUMBIA GAS TRANSMISSION, LLC, | ) | |
|---|---|---|
| | ) | |
| | ) | Civil No. 12-72-ART |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE RAVEN CO., INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| SILVER SLATE, LLC, | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND ORDER** |
| | ) | |
| ARCH SPECIALTY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

While this case was pending in federal court, Kentucky mine regulators charged the defendants with violating several state regulations based on conduct related to the landslide at issue here. The defendants chose not to contest those allegations, and a final order from the state regulators accordingly deemed them admitted. Relying on that order, the plaintiff says litigation over certain elements of its claims is precluded, and hence moved for partial summary judgment. Most of the elements of preclusion are met, but the Court requires additional briefing regarding which facts were actually decided in the state administrative proceedings, and whether those facts satisfy any elements of the plaintiff's claims.

## BACKGROUND

This lawsuit arises out of a landslide that damaged Columbia Gas Transmission, LLC's ("Columbia") gas pipeline in Floyd County, Kentucky. R. 1 ¶ 23. Columbia alleges that the coal mining and reclamation activity of The Raven Co., Inc. ("Raven") and Silver Slate, LLC ("Silver Slate") is to blame. *Id.* ¶ 24. Asserting several causes of action including (among others) negligence, trespass, nuisance, and breach of certain agreements, *see* R. 266 at 1–2 (summarizing claims), Columbia seeks declaratory and injunctive relief, as well as compensatory and punitive damages, *see* R. 1 at 9–11, 19–21; R. 188 ¶¶ 72, 96.

For the defendants, legal trouble was already brewing, however, before this action even commenced. In February 2012, an inspector from the Kentucky Division of Mine Reclamation and Enforcement ("DMRE")—an agency within the State's Energy and Environment Cabinet, *see* Ky. Rev. Stat. § 224.10-020(2)—issued a "Notice of Non-compliance" citing Raven and Silver Slate for various regulatory violations. *See* R. 231-21 at 2–5. Both companies allegedly (1) allowed an off-permit slide to occur, (2) created conditions "reasonably expected to cause significant, imminent environmental harm" to natural resources, (3) failed to maintain the appropriate buffer zone surrounding Columbia's gas pipeline, and (4) failed to mine in such a way as to minimize damage to that line. *Id.* at 4–5 (citing 405 Ky. Admin. Regs. 7:040, 8:010, and 16:250). The DMRE inspector also ordered Raven and Silver Slate to correct the violations by, among other measures, removing materials from the off-permit area to the greatest extent possible. *Id.* Neither company contested the Notice. R. 234-1 at 20 ¶ 30.

Several months later, Columbia brought this suit, *see* R. 1, but the state administrative proceedings marched on alongside the federal litigation. Despite the initial inspector's order,

subsequent inspections over the following year revealed little if any corrective action by Raven or Silver Slate, resulting in further orders to comply and to clean up the slide. R. 234-1 at 21–23 ¶¶ 34–39. Eventually the DMRE had enough, and in June 2013 issued a "Notice of Proposed Assessment," recommending a $33,700 penalty for a number of ongoing regulatory violations. *See* R. 231-25 at 11. According to the assessment officer's report, Raven and Silver Slate damaged Columbia's pipeline as a result of its reckless mining activity. *Id.* at 8–10. In response, the defendants initially sought an assessment conference regarding the penalty, but then withdrew that request, reserving the right to seek a formal administrative hearing. R. 231-25 at 33. As a result, with the agreement of the parties, a conference officer in September recommended to the Cabinet Secretary that the proposed penalty assessment be affirmed, subject to a possible later hearing. *Id.* Raven and Silver Slate then had 30 days to request that hearing. *See* 405 Ky. Admin. Regs. 7:092 § 4(10).

No request for a hearing contesting the violations ultimately came. R. 234-1 at 28 ¶ 48. Had the defendants pursued such a hearing, however, they would have been free to make oral or written argument, offer testimony, cross-examine witnesses, and seek judicial review of the resulting decision. *See* 405 Ky. Admin. Regs. 5:095 1(8), (19). But they did not so choose. So, in accordance with the regulations, the Cabinet Secretary issued a Final Order imposing the proposed penalty and declaring that as a result of the failure to timely request a hearing (1) the defendants waived their right to a hearing, (2) the fact of the violations cited in the initial Notice of Non-compliance was deemed admitted, and (3) the recommended penalty assessment was similarly deemed admitted. *See* R. 231-25 at 39–40. The Secretary also ordered Raven and Silver Slate to "perform all remedial measures" required by prior orders. *Id.* at 40.

3

Based on the Final Order and the associated DMRE proceedings, Columbia now moves for partial summary judgment. *See* R. 234. Invoking the doctrine of administrative issue preclusion, Columbia seeks to head off litigation over key questions in this case, including breach as to negligence *per* se, unreasonable interference as to nuisance, and the defendants' state of mind. *See* R. 266. The Court heard argument over the motion on May 27, 2014, taking the matter under advisement. *See* R. 267. Argument focused on whether Kentucky courts would accord the Secretary's order and the surrounding findings preclusive effect. Because they would, the Court will order the defendants to respond to Columbia's supplemental brief, R. 266, analyzing which facts the Secretary actually decided and whether those findings match up with any of the elements of Columbia's causes of action.

## DISCUSSION

As a matter of federal common law, state administrative decisions generally have the same preclusive effect in federal court as they would in state court. "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (internal quotation marks, ellipsis, and citation omitted). The federal test for state administrative issue preclusion thus has three basic elements: First, was the agency acting in a judicial capacity? Second, would the decision have preclusive effect under state law? And last, does the federal action seek to litigate issues already determined by the state agency? *Nelson v. Jefferson Cnty.*, 863 F.2d 18, 19 (6th Cir. 1988).

Because the issues adjudicated by the Cabinet Secretary and the DMRE would receive preclusive effect under Kentucky law, the parallel state administrative proceedings bar the defendants from relitigating any overlapping issues in this case. The parties therefore must fully address what facts were necessary to the Secretary's Final Order, and whether those facts satisfy any of the elements of Columbia's claims, warranting summary judgment.

I.  **Acting in a Judicial Capacity and the Opportunity to Litigate**

Now to the first element of *Elliott*'s test: A state agency "acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and gives the parties an opportunity to seek court review of any adverse findings." *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (quoting *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012) (internal quotation marks and alteration omitted)). The key is simply the *opportunity* to present evidence, argue the facts, and seek judicial review; the parties need not actually go through the motions for an agency to act in a judicial capacity. *See Herrera*, 680 F.3d at 550 (holding that a party's "failure to avail [itself] of the full procedures provided by state law does not constitute a sign of their inadequacy" (internal quotation marks omitted)). Providing an adequate opportunity to litigate is thus what it means for an agency to act in a "judicial capacity"; they are two sides of the same coin. *See Peterson*, 714 F.3d at 913 (analyzing both together); *Herrera*, 680 F.3d at 550 (same).

The defendants concede that in the state administrative proceedings at issue, the Secretary acted in a judicial capacity. Raven admitted as much in its response brief, R. 253 at 10, but Silver Slate initially held out, R. 254 at 5–6. By oral argument, however, Silver Slate saw the light and joined in Raven's concession.

5

That was wise. Examining the state proceedings here, it is clear the Cabinet Secretary was acting in a sufficiently judicial-like manner: When a party requests an administrative hearing, they are free to make use of counsel, offer oral and written argument, introduce testimony, and cross-examine witnesses. 405 Ky. Admin. Regs. 5:095 § 1(8). An independent hearing officer presides, and after considering all the evidence, determines whether the alleged violation occurred, issuing proposed findings of fact and law. *Id.* at § 1(8), (11)(a). The Cabinet Secretary then reviews the hearing officer's recommendation and issues a final order adjudicating the issues. *Id.* at § 1(13), (17). And even after all that, an aggrieved party still may seek judicial review of the secretary's final order. *Id.* at § 1(19). These procedures are certainly commensurate with (if not more robust than) the procedures found judicial enough to trigger preclusion in *Peterson* and *Herrera*. There is no doubt the defendants had an adequate opportunity to litigate the issues before the Secretary. The federal door to administrative preclusion is therefore open. The rest depends on Kentucky law.

## II. Kentucky Law of Administrative Issue Preclusion

In Kentucky, administrative decisions by state agencies acting in a judicial capacity are entitled to the same preclusive effect as judgments of courts.[1] *Kentucky Bar Ass'n v. Harris*, 269 S.W.3d 414, 418 (Ky. 2008) (citing *Godbey v. University Hospital of the Albert B. Chandler Medical Center, Inc.,* 975 S.W.2d 104, 105 (Ky. Ct. App. 1998)); *see also Barnes v. McDowell*, 647 F. Supp. 1307, 1310–11 (E.D. Ky. 1986) (collecting cases) *rev'd*

---

[1] Kentucky follows the same definition of "judicial capacity" as the Sixth Circuit, so this initial threshold question of state law is satisfied: "[A]n administrative board acts in a 'judicial capacity' when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings." *Waldridge v. Homeservices of Kentucky, Inc.*, 384 S.W.3d 165, 170 (Ky. Ct. App. 2011) (adopting the Sixth Circuit's definition in *Nelson v. Jefferson County*, 863 F.2d 18, 19 (6th Cir. 1988)).

*on other grounds*, 848 F.2d 725 (6th Cir. 1988). So, Columbia's motion ultimately boils down to Kentucky's general law of issue preclusion (also known as collateral estoppel). The elements of that doctrine, if not their precise application, track the Restatement (Second) of Judgments (1982) [hereinafter Restatement]: An earlier case only bars subsequent litigation over issues that (1) are the same as the issues now presented, (2) were actually litigated, (3) were actually decided, and (4) were necessary to the prior court's judgment. *See Yeoman v. Commonwealth*, 983 S.W.2d 459, 465 (Ky. 1998) (citing Restatement § 27). Unlike claim preclusion, the parties need not be the same across both cases. *See Miller v. Admin. Office of Courts*, 361 S.W.3d 867, 872–73 (Ky. 2011).

But as a *plaintiff* asserting issue preclusion offensively, Columbia adds another wrinkle. "[S]pecial problems arise when the doctrine is used in an offensive manner." *Bd. of Educ. of Covington v. Gray*, 806 S.W.2d 400, 402 (Ky. Ct. App. 1991) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)). For example, when the stakes in the first case are small (giving the prior losing party only a weak incentive to litigate) or the procedures less robust, applying preclusion offensively "may be unfair to a defendant." *Parklane Hosiery*, 439 U.S. at 331–32.

As a result, before issue preclusion will stick against a current defendant who lost earlier, the plaintiff must overcome some additional hurdles. Two further elements must be met: (5) the defendant must have had a "realistically full and fair opportunity to litigate the issue," and (6) preclusion must be consistent with "principles of justice and fairness." *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001); *see also Revenue Cabinet v. Samani*, 757 S.W.2d 199, 202 (Ky. Ct. App. 1988) ("[T]he doctrines of res judicata and issue preclusion are based on rules of justice and fairness."). "[W]here the application of offensive estoppel

7

would be unfair to a defendant, the trial judge in the exercise of his discretion should not allow" its use. *Covington v. Bd. of Trustees of Policemen's & Firefighters' Ret. Fund*, 903 S.W.2d 517, 521–22 (Ky. 1995); *see also United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977) (holding that preclusion should not apply "when it would result in manifest injustice to a party or violate an overriding public policy"). Offensive issue preclusion therefore does not apply mechanically; it depends on careful "case by case" analysis. *Covington*, 903 S.W.2d at 522.

As discussed below, some crucial elements of issue preclusion are satisfied as applied to the Cabinet Secretary's proceedings. It remains to be seen, however, which if any of the issues the Secretary decided overlap with the elements of Columbia's claims. To decide that question, which is essential to the motion for partial summary judgment, the Court requires full briefing from the parties regarding Columbia's supplemental memorandum submitted shortly before oral argument. *See* R. 266.

### A. Actually Litigated

Under Kentucky law, whether the issues decided by the Secretary's Final Order have been "actually litigated" depends on how best to characterize that order. Is it most like a default judgment? A consent judgment? Something else entirely? None of this would matter if Kentucky simply followed the Restatement, which does not recognize admissions, stipulations, consent judgments, or defaults as "actual litigation" for the purposes of issue preclusion. *See* Restatement § 27 cmt. e. But since Kentucky law does not always reflect the Restatement, much hangs on the proper characterization. For example, when it comes to default judgments, Kentucky notably departs from the Restatement's approach, according such judgments preclusive effect. *See Davis v. Tuggle's Adm'r*, 178 S.W.2d 979, 981

(1944) ("The fact that no defense was offered in the suit against the contentions of the widow cannot make any difference, for the rule as to the conclusiveness of judgments applies to a judgment by default."); *see also Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 309 (Ky. 2010) (reaffirming the rule in *Davis*).[2] Consent judgments are sometimes preclusive, but other times they aren't; cases in Kentucky go both ways. *Compare Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997) (wife's stipulation to paternity incorporated into divorce settlement agreement later given preclusive effect), *with Burgess v. Consider H. Willett, Inc.,* 225 S.W.2d 315, 317 (Ky. 1949) ("[A] judgment by agreement or consent, since no inquiries are made into the merits or equities of the case by the court, constitutes only the agreement of the parties."). The Court need not resolve that tension, however, because the Secretary's Final Order is plainly not akin to a consent judgment—that much is clear. Raven and Silver Slate did not affirmatively agree to anything; they simply failed to act. That is not a genuine settlement. And besides, the order here is better characterized as a default judgment.

Drawing from Kentucky's law of civil procedure, default judgment appears to be the fairest analogue to the Secretary's order. To avoid default under Kentucky Civil Rule 55.01, a defendant at a minimum must "voluntarily take[ ] a step in the main action that shows or from which it may be inferred that he has the intention of making some defense." *Smith v.*

---

[2] In dicta, one recent Kentucky case noted by Raven seems to contradict the established rule that default judgments may trigger preclusion. *See Five Star Lodging, Inc. v. George Const., LLC*, 344 S.W.3d 119, 125 (Ky. Ct. App. 2010) ("[A] default judgment is not a judgment on the merits . . . ."). But the Kentucky Supreme Court case cited by the Court of Appeals, *Buis v. Elliott*, 142 S.W.3d 137, 139–140 (Ky. 2004), does not support that proposition at all. The Court in *Buis* simply held that a default judgment against two defendants did not later preclude a permissive cross-claim, unraised in the original suit, between the codefendants. The dicta in *Five Star* is therefore plainly wrong, but regardless, the Kentucky Supreme Court reaffirmed the rule in *Davis* a few months after *Five Star* in *Hill*. As such, *Hill* completely undermines any persuasive force *Five Star*'s dicta might have. For better or worse, default judgments get preclusive effect in Kentucky.

*Gadd*, 280 S.W.2d 495, 498 (Ky. 1955). And the defendants most definitely took no such affirmative step here. To be sure, Raven and Silver Slate did not ignore the DMRE completely: They responded to the agency, acknowledging the proposed penalty, but they simply reserved the right to contest the alleged regulatory violations at a formal administrative hearing. The defendants nowhere disputed the allegations, however, and they never invoked their hearing right. This distinguishes the situation here from a third potential characterization other than either default or consent: What the Restatement labels a "failure to deny." § 27 cmt. e. Admissions by failure to deny usually don't get preclusive effect, but in those cases the party opposing preclusion had at least disputed some of the issues, while remaining silent on others. *See, e.g.*, *United States v. Young*, 804 F.2d 116, 118 (8th Cir. 1986) (analyzing as a "failure to deny" the government's decision not to raise an additional possible ground for opposing the defendant's earlier motion).

In contrast, Raven and Silver Slate denied *nothing*, offering no answer on the merits whatsoever, making this more like a true default. In response to that inaction, the Secretary issued a Final Order declaring the fact of the violations admitted, as required by 405 Ky. Admin. Regs. 7:092 § 4(10). That order bears the defining hallmark of a default judgment since it directly flows from the failure to mount a defense. And Kentucky's courts even refer to such orders issued under 7:092 as "default order[s]." *Natural Res. & Envtl. Prot. Cabinet v. Cricket Coal Co., Inc.*, 780 S.W.2d 609, 611 (Ky. 1989) (referring to 7:090 which has since been repealed and incorporated into 7:092); *see also Com., Energy & Env't Cabinet v. Spurlock*, 308 S.W.3d 221, 227 (Ky. Ct. App. 2010) (referring to 7:092's "default provisions"). Since Raven and Silver Slate's limited response to the DMRE's proposed penalty indicates no intention to mount a genuine defense, the Secretary's ensuing Final

10

Order is most fairly characterized as a default judgment. And as such, that Order counts as "actual litigation" under Kentucky's doctrine of issue preclusion. *See Davis*, 178 S.W.2d at 981.

### B. Actually Decided and Necessary to the Secretary's Judgment

So the Secretary's order is a default judgment, but because that judgment is pretty bare-bones, largely failing to spell out the issues adjudged, how must the Court determine which questions were actually decided? That generally requires working backwards, inferring from the elements of the underlying claims and penalties the facts that logically *must* have been decided to support the judgment. *See* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4420 (2d ed.) [hereinafter Wright & Miller] ("Careful examination of the record often fails to show any explicit decision, particularly with a general verdict. Examination of the record often culminates instead in a process of inference, in which it is taken that an issue was actually decided if its decision was necessary to support the result reached on the record presented in the first action."). Kentucky follows this approach: "In a default judgment situation, the defaulting party admits only such allegations on the pleadings as are necessary to obtain the particular relief sought by the complaint." *Howard v. Fountain*, 749 S.W.2d 690, 692–93 (Ky. Ct. App. 1988); *see also Hammonds v. Jones*, 122 S.W.2d 736, 739 (Ky. 1938) (concluding that a party's ownership of a tract of land had been adjudicated by a default judgment because that fact was the premise of his right to recover). And since this inferential method of determining the issues decided is a but-for test—without deciding them, there would be no claim—these issues by definition are also *necessary* to the resulting judgment (for logical necessity is the entire premise of the reasoning).

11

It is no answer, moreover, to say that no issues were actually decided or necessary because the Secretary's order, based only on the defendants' failure to contest the violations, is devoid of findings of fact and law. *See* R. 253 at 24; R. 254 at 6. For that is basically just another way of arguing that default judgments do not get preclusive effect; otherwise, how could such judgments—usually missing express findings—possibly satisfy the elements of issue preclusion? But since we know Kentucky *does* give default judgments preclusive effect, the absence in the judgment of express conclusions of fact and law cannot possibly defeat preclusion. As a result, when the default judgment is silent, as here, inferring the issues decided based on the elements of the underlying claims and penalties is the only viable method of faithfully applying Kentucky's law of issue preclusion.

The parties therefore must fully brief which issues are logically necessary to the violations and penalties the Secretary's Final Order declared admitted. To the extent that order adopted the findings of others in the DMRE, the same inferential approach applies to their logically necessary findings as well.

**C. Full and Fair Opportunity to Litigate**

Although the Court already concluded that the defendants had an adequate opportunity to litigate as a matter of federal law, Kentucky's law of offensive issue preclusion shares that element. *See Berrier*, 57 S.W.3d at 281. The bottom line is the same under state law: The defendants certainly had "a realistically full and fair opportunity to present [their] case" before the Cabinet Secretary. *Sedley v. City of W. Buechel*, 461 S.W.2d 556, 559 (Ky. 1970). As discussed above, Kentucky regulations give defendants the right to a formal administrative hearing, and those hearings feature robust adversarial procedures. *See* 405 Ky. Admin. Regs. 5:095 § 1. And the Sixth Circuit in *Herrera* also found that

similar procedures support preclusion under Kentucky law. 680 F.3d at 550. So as a matter of both federal and state preclusion doctrine, there is no question that the defendants here had an adequate opportunity to litigate in the administrative proceedings parallel to this litigation.

### D. Justice and Fairness

But would according those proceedings preclusive effect be equitable? This is the final and toughest element of Kentucky's offensive issue preclusion doctrine. When ascertaining whether such preclusion would be just or fair, Kentucky's courts look to the factors discussed by the Supreme Court in *Parklane Hosiery* as well as the Restatement. *Covington*, 903 S.W.2d at 521–22; *Gray*, 806 S.W.2d at 402–03. As already noted, comparatively small stakes and limited, informal procedures in the first action both suggest that applying preclusion is unjust. *Gray*, 806 S.W.2d at 403 (explaining that preclusion "may be inappropriate where the amounts in controversy are 'markedly different,' or when the 'quality and extensiveness' of the two proceedings are not comparable" (quoting Restatement § 28)); *see also Parklane Hosiery*, 439 U.S. at 331–32. Preclusion may also be inappropriate if treating an agency proceeding as conclusive would inevitably warp a deliberately informal administrative process into a longer, more contentious, and more expensive endeavor, frustrating prompt resolution and wasting resources. *See Berrier*, 57 S.W.3d at 281; *Gray*, 806 S.W.2d at 403; *see also Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 549–50 (6th Cir. 2012) ("We have declined to apply administrative preclusion when the agency proceedings served a more limited purpose than the subsequent lawsuit."). On the other hand, if the allegations in the first action were "serious" and subsequent litigation foreseeable, then preclusion might be just fine because the incentives to litigate fully were strong. *Parklane Hosiery*, 439 U.S. at 332.

As applied here, these factors cut in favor of preclusion. First, the stakes of the administrative proceedings were sufficiently high to give the defendants a strong incentive to litigate. To be sure, the fine was relatively minor, only $33,700. But Raven and Silver Slate were also ordered to clean up the off-permit slide, which according to Columbia will cost somewhere around $1 million. *See* R. 234-1 at 51. And that estimate is undisputed. So the real stakes before the Secretary were much greater than the fine alone. This suggests it is fair to accord his order preclusive effect: Even if the amount in controversy in this federal civil litigation is much higher than in the administrative proceedings, the stakes in those proceedings were still quite significant.

Moreover, some of the DMRE allegations were serious, and private litigation certainly foreseeable. *See* R. 231-25 at 10 (alleging that the defendants damaged Columbia's gas line by "reckless[ ]" mining activity "reasonably expected to cause significant/imminent environmental harm" to natural resources). Indeed, this very litigation was *occurring simultaneously*, having commenced before the Secretary's Final Order. The litigation was not only foreseeable, it was already here for all to see.

Lastly, the potential of preclusion to distort future state agency adjudication is small: Unlike the informal unemployment compensation hearings in *Berrier* and *Gray*, the DMRE proceedings are already fairly involved, since they are designed to be formal. Much like a full-dress trial, parties may retain counsel, submit oral and written argument, introduce testimony, cross-examine adverse witnesses, and appeal unfavorable rulings. *See* 405 Ky. Admin. Regs. 5:095 § 1. As such, these hearings are designed neither to be quick nor cheap. So raising the stakes a little by according preclusive effect to the Cabinet Secretary's order

14

will hardly transform the agency's proceedings into something they are not meant to be. Each of the relevant factors therefore suggests applying preclusion would be equitable.

### III. The Scope of Administrative Preclusion and Questions of Law Application

Even though most of the general prerequisites for administrative issue preclusion are satisfied, one last federal question remains: How broadly does the Supreme Court's rule of preclusion in *Elliott* reach? Columbia asserts preclusion not only as to questions of fact resolved by the Kentucky Cabinet Secretary, but also as to his application of law to fact—*i.e.*, his conclusion that the defendants violated various mining regulations. Questions of law application are mixed questions of law and fact. *See Ornelas v. United States*, 517 U.S. 690, 696–97 (1996) (citing *Pullman-Standard v. Swint*, 456 U.S. 273, 289, n.19 (1982)). Does *Elliott* go that far?

There is admittedly some uncertainty as to whether a state agency's application of law to fact, as opposed to merely its factfinding, is eligible for preclusive effect in federal court. Traditional issue preclusion doctrine certainly covers such questions. *See* Wright & Miller, § 4425 ("[I]t is quite clear that preclusion extends beyond findings of historic fact to include some determinations that mingle facts with conclusions of law. Preclusion generally is appropriate if both the first and second action involve application of the same principles of law to a historic fact setting that was complete by the time of the first adjudication."). But when it comes to administrative preclusion, the Sixth Circuit expressly holds otherwise: a state agency's determination of "a mixed question of law and fact . . . [is] not entitled to preclusive effect in federal court." *Noyes v. Channel Products, Inc.*, 935 F.2d 806, 809 (6th Cir. 1991); *cf. Layne v. Campbell County Dep't of Social Servs.*, 939 F.2d 217, 221 (4th Cir. 1991) (distinguishing "errors of law" from unreviewable "factfinding of the administrative

15

panel"); *Martin v. Garman Const. Co.*, 945 F.2d 1000, 1004 (7th Cir. 1991) (refusing to give preclusive effect to agency's conclusion of law); *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1068 (11th Cir. 1987) (emphasizing that "*Elliott* carefully limited its holding to state agency factfinding"). As a result, questions of law application, such as whether the defendants violated Kentucky mining regulations, are ineligible for preclusive effect under *Elliott*, unlike questions of historical fact.[3]

That conclusion ultimately may be much ado about nothing, however, because Kentucky, unlike many other jurisdictions, accords default judgments preclusive effect. As a result, in default judgment cases the only way to determine which facts were actually decided is to infer them from the elements of the underlying claims. *See supra* Part II.B. But the Court strictly speaking will not accord the Secretary's finding that the defendants violated various mining regulations preclusive effect. Under *Noyes*, that legal conclusion is a question for another day, when the Court decides whether the undisputed and precluded facts meet any of the elements of Columbia's causes of action. That said, Kentucky's decision to give preclusive effect to default judgments admittedly takes some force out of the rule against treating a state agency's application of law to fact as conclusive.

---

[3] The Supreme Court might not share this narrow reading of *Elliot*. Only eight days before the Sixth Circuit decided *Noyes*, the Court emphasized that traditional common law doctrines of issue preclusion apply to state administrative proceedings: "We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and *res judicata* (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). And the opinion further explains that preclusion applies "equally" to "issues" decided by courts and by administrative agencies in judicial-type proceedings. *Id.* (citing *Elliott*, 478 U.S. at 798). "Issues" plausibly could be read to cover not only questions of historical fact, but all questions traditionally eligible for issue preclusion. Unfortunately, the Sixth Circuit did not discuss *Astoria* in *Noyes*, but the two cases are reconcilable: to support its general summary of administrative preclusion, *Astoria* simply cites *Elliott*, which expressly concerns only state agency "factfinding." *Elliott*, 478 U.S. at 797–98. The "issues" *Astoria* has in mind are thus most likely the set of issues covered by *Elliott*: questions of fact. When *Astoria* is read this way, there is no inherent tension with *Noyes*. And since the Sixth Circuit is required to follow Supreme Court precedent, *see Agostini v. Felton*, 521 U.S. 203, 237 (1997), if there is a reasonable reading of that precedent consistent with a subsequent opinion of the Court of Appeals (as there is here), lower courts must presume the circuit adopted that reading.

## CONCLUSION

Now it just comes down to which issues were actually litigated, and whether those issues line up with any of the elements of Columbia's claims. And to decide that, the Court requires further analysis from the parties. Upon receiving additional briefing, the Court will rule on Columbia's partial motion for summary judgment.

For the reasons stated, it is accordingly **ORDERED** that:

(1) Raven and Silver Slate **SHALL RESPOND** to Columbia's supplemental brief, R. 266, no later than **Monday, June 30, 2014**. Whatever Columbia covered in that brief, however, the defendants must analyze which issues have been "actually decided," applying the inferential approach laid out by the Court in this opinion. *See supra* Part II.B. And then, assuming all the issues Columbia says have been decided actually were, the defendants must also analyze whether those issues satisfy any of the elements of Columbia's causes of action, warranting full or partial summary judgment on any claims.

(2) Columbia **SHALL REPLY** to the defendants' responses no later than **Monday, July 14, 2014**.

This the 13th day of June, 2014.



Signed By:
*Amul R. Thapar*
United States District Judge