UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | ) ) ) |
| | ) Civil No. 12-72-ART |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE RAVEN CO., INC., et al., | ) ) |
| Defendants. | ) ) |
| _____ | ) **MEMORANDUM OPINION** ) **AND ORDER** |
| SILVER SLATE, LLC, Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| ARCH SPECIALTY INSURANCE COMPANY, et al., | ) ) ) ) |
| Third-Party Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

Wars are made of many battles; but each can be fought only once. When a party loses before an administrative agency, either because it fought hard and came up short, or because it chose not to fight at all, this Court does not offer a new battlefield on which to refight the same battle. Rather, an agency's final order cements the party's defeat—at least so far as the order goes. Where the order is a mere default judgment, the task of determining just how far it goes must start at the end result and work its way back, identifying the elements logically required to produce the final outcome.

During the course of the present litigation, Kentucky mine regulators charged the defendants with violating several state regulations based on the same conduct at issue here. The defendants chose not to contest those allegations, and so, in a final order, the state regulators deemed the violations admitted. The plaintiff now relies on that order to preclude relitigating certain elements of its claims. The Court previously concluded that most of the elements of preclusion were met, but two questions remained. The Court ordered additional briefing on which facts were actually decided in the state administrative proceedings, and whether those facts satisfy any elements of the plaintiff's claims. Because the necessary findings of the final order satisfy all the elements of the claims in the plaintiff's Motion for Partial Summary Judgment, the Court will grant the motion in part. The Court will deny the motion in part as to punitive damages.

**BACKGROUND**

This Court recounted the facts of this case in its prior opinion addressing the preclusive effect of the administrative final order. *See Columbia Gas Transmission, LLC v. The Raven Co.*, CIV. 12-72-ART, 2014 WL 2711943 (E.D. Ky. June 13, 2014). For the purposes of this opinion, a brief review suffices.

A landslide damaged Columbia Gas Transmission, LLC's ("Columbia") gas pipeline in Floyd County, Kentucky. R. 1 ¶ 23. According to Columbia, The Raven Co., Inc. ("Raven") and Silver Slate, LLC ("Silver Slate") (collectively, "the defendants") are to blame. *Id.* ¶ 24. Columbia filed several causes of action including (among others) negligence *per se*, trespass, nuisance, and common law negligence, *see* R. 266 at 1–2 (summarizing claims).

Before Columbia had even filed its complaint, however, an inspector from the Kentucky Division of Mine Reclamation and Enforcement ("DMRE")—an agency within the State's Energy and Environment Cabinet, *see* Ky. Rev. Stat. § 224.10-020(2)—issued a "Notice of Non-compliance" ("the Notice") citing Raven and Silver Slate for various regulatory violations. *See* R. 231-21 at 2–5. The Notice alleges that the defendants (1) allowed an off-permit landslide, (2) created conditions "reasonably expected to cause significant, imminent environmental harm" to natural resources, (3) failed to maintain the appropriate buffer zone around Columbia's gas pipeline, and (4) failed to mine in such a way as to minimize damage to that line. *Id.* at 4–5 (citing 405 Ky. Admin. Regs. 7:040, 8:010, and 16:250). The mining inspector ordered the defendants to take various corrective measures, such as removing the materials from the off-permit area. *Id.* Neither company contested the Notice. R. 234-1 at 20 ¶ 30.

Repeated inspections concluded that the defendants failed to take meaningful corrective measures. R. 234-1 at 21–23 ¶¶ 34–39. Dissatisfied with administrative remedies, Columbia filed this suit. *See* R. 1. As the defendants failed to comply with order after order from the DMRE, the DMRE finally issued a "Notice of Proposed Assessment," recommending a $33,700 penalty for the ongoing regulatory violations. *See* R. 231-25 at 11. The defendants waived their right to an assessment conference on the penalty, R. 231-25 at 33, and then waived their right to a hearing on the Cabinet Secretary's acceptance of the Proposed Assessment. R. 234-1 at 28 ¶ 48. Accordingly, the Secretary issued a Final Order ("the Order") imposing the proposed penalty and declaring that (1) the defendants waived their right to a hearing, (2) the facts of the violations cited in the initial Notice of Noncompliance were deemed admitted, and (3) the recommended penalty assessment was

deemed admitted. *See* R. 231-25 at 39–40. The Secretary also ordered Raven and Silver Slate to "perform all remedial measures" required by prior orders. *Id.* at 40.

Columbia moved for partial summary judgment, invoking the doctrine of administrative issue preclusion as to the Order. R. 234. Columbia sought summary judgment on its claims for negligence *per se*, trespass, nuisance, and two elements of common law negligence. The Court previously concluded that Kentucky courts would grant the Order and surrounding findings preclusive effect. R. 275. It was less clear, however, which findings the Secretary actually decided and whether those findings satisfy any of the elements of Columbia's claims. The Court ordered additional briefing on these questions and now concludes that Columbia's Motion for Partial Summary Judgment should be granted except as to punitive damages.

## DISCUSSION

### I. Revisiting One of the Court's Prior Holdings

Although the Court requested that the parties address only the two remaining questions, both parties included arguments challenging or supporting one of the Court's prior holdings. Because it has a duty to correct its own errors, the Court will take up the parties' invitation to revisit its earlier opinion. *See Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943); *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82 (1922). Before final judgment, after all, there is no bar to reversing course. *See Marconi Wireless Tel. Co.*, 320 U.S. at 48. Correcting errors now, rather than on appeal, tends to conserve the resources of the parties and the courts.

The Court previously held that "questions of law application, such as whether the defendants violated Kentucky mining regulations, are ineligible for preclusive effect."

4

R. 275 at 15–16. Though traditional issue preclusion doctrine "extends beyond findings of historical fact to include some determinations that mingle facts with conclusions of law," *id.* (quoting Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4425 (2d ed.) [hereinafter Wright & Miller]), the Sixth Circuit seemed to "expressly hold[] otherwise." *Id.* (citing *Noyes v. Channel Products, Inc.*, 935 F.2d 806, 809 (6th Cir. 1991)). In *Noyes*, the court explained that a state agency's decision "resolved a mixed question of law and fact, and therefore was not entitled to preclusive effect in federal court." *Noyes*, 935 F.2d at 809 (citing *Yates v. Avco Corp.*, 819 F.2d 630, 636 (6th Cir. 1987)).

But courts must interpret text in light of its cited authority. Upon close scrutiny, *Noyes* does not hold that, as a matter of federal common law, an agency's resolution of mixed questions is not entitled to preclusive effect in federal court. Rather, *Noyes*' holding is best read as an application of Ohio's preclusion law. The confusion is understandable. When the *Noyes* court seemed to expressly deny the preclusive effect of mixed questions resolved by state agencies, it cited *Yates*—another Sixth Circuit case. *Id.* (quoting *Yates*, 819 F.2d at 636 ("[C]onstructive discharge is, at least partially, a question of law and must therefore be reviewed by this Court *de novo*.")).

To understand what *Noyes* means, then, we must look to *Yates*. But *Yates* cannot support the proposition for three reasons. First, *Yates* had nothing to do with preclusion or with state law. 819 F.2d 630 (involving a sexual harassment claim brought under Title VII of the Civil Rights Act of 1964). It only endorsed considering "constructive discharge" as a legal question—the same issue raised in *Noyes*. *See id.* at 636 ("[C]onstructive discharge is, at least partially, a question of law and must therefore be reviewed by this Court *de novo*."). And, of course, because *Yates* did not involve state law or preclusion, it is only natural that

5

the court of appeals would review *de novo* the lower court's resolution of legal questions. Indeed, *Yates* cites for the proposition a case that also reviews *de novo* legal questions related to constructive discharge under Title VII—a case that, once again, has nothing to do with preclusion or state law. *See Jacobs v. Martin Sweets Co.*, 550 F.2d 364, 370–71 (6th Cir. 1977).

Second, *Yates* cannot stand for the sweeping proposition that the Sixth Circuit reviews *all* mixed questions of fact and law *de novo*, even in the context of issue preclusion. Such a holding would make no sense—especially with no explanation—because the Sixth Circuit has repeatedly looked to state law to determine what preclusive effect to give state court resolutions of mixed questions. *See, e.g.*, *Knott v. Sullivan*, 418 F.3d 561, 567 (6th Cir. 2005) (looking to Ohio law to determine what preclusive effect to give a state court's ruling that a search violated the Fourth Amendment).

Finally, *Yates* cannot stand for the narrower proposition that the Sixth Circuit reviews *de novo* all state-*agency* resolutions of mixed questions, even in the context of preclusion, because *Yates* did not involve a state agency. 819 F.2d 630 (remanding a Title VII claim so that the district court could recalculate damages).

On what authority, then, did the *Noyes* court rely for its refusal to preclude mixed questions? It seems to have relied on its reading of state law: "Ohio state courts accorded full preclusive effect to the factual determinations of the state unemployment agency." *Noyes*, 935 F.2d at 809 (citing *Pullar v. UpJohn Health Care Servs., Inc.*, 488 N.E.2d 486, 490 (1984)).[1] The *Noyes* court looked to Ohio law because, "[w]hen the factfinding of a

---

[1] It is not entirely clear that Ohio courts would refuse to grant preclusive effect to the legal conclusions of state agencies. In *Pullar*, for example—the Ohio case cited by *Noyes*—the court seems to quote with approval cases that

6

*state agency* is involved, a federal court must accord such findings the same degree of preclusive effect that they would receive in the courts of that state." *Id.* (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986)). Admittedly, the Supreme Court limited its discussion in *Elliott* to *factfinding* by a state agency. It did not, however, explicitly address whether legal conclusions should be treated any differently. Indeed, just eight days before the Sixth Circuit decided *Noyes,* the Supreme Court reaffirmed that "administrative estoppel is favored as a matter of general policy." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 109 (1991). Though, like *Elliot*, *Astoria* only involved agency factfinding, the Supreme Court explained in broad terms its "long favored application of the common-law doctrines of collateral estoppel (as to issues) and *res judicata* (as to claims) to those determinations of administrative bodies that have attained finality." *Id.* at 107.

This question is far from settled among the circuits. *Compare White v. Palmer*, 229 F.3d 1161 (9th Cir. 2000) (unpublished) (holding that "plaintiff's claims were precluded under California law and, consequently, the Administrative Law Judge's findings of fact and *conclusions of law* in the license revocation proceedings precluded plaintiff's claims before the federal court" (emphasis added)), *Crossroads Cogeneration Corp. v. Orange & Rockland Utilities, Inc.*, 159 F.3d 129, 135 (3d Cir. 1998) (holding that "factual findings *and legal*

---

embrace precluding questions of both law and fact. *See Pullar*, 488 N.E.2d at 490 (quoting *Knox v. Cornell Univ.*, 80-CV-236, WL 484 (N.D.N.Y. July 14, 1982)) ("A party may be precluded from relitigating an issue of law or fact." (internal quotation marks omitted)). But the court in *Pullar* is heavy on quoting other courts and light on explaining its own take on what the other courts say. In the end, *Pullar* endorsed granting preclusive effect only to agency factfinding. *See id.* at 489. And, regardless of what *Pullar* actually intended, the *Noyes* court seemed to act under the impression that Ohio law did not grant preclusive effect to agency conclusions of law. *See Noyes*, 935 F.2d at 809 (citing *Pullar*, 488 N.E.2d 486) ("[A] federal court must accord such findings the same degree of preclusive effect that they would receive in the courts of that state. . . .Ohio state courts accorded full preclusive effect to the *factual* determinations of the state unemployment agency." (emphasis added) (internal reference omitted)). The Court is not alone in interpreting *Noyes* as looking to Ohio law to justify rejecting preclusion of mixed questions. *See Gifford v. Meda*, 09-CV-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010) (describing *Noyes* as following Ohio state courts, "which would not give preclusive effect to a mixed question of fact and law").

7

*conclusions* of the [state agency] should be given preclusive effect to the extent afforded under [state] law" (emphasis added)), *and Solomon v. Dixon*, 904 F.2d 701 (4th Cir. 1990) (unpublished) (interpreting *Elliott* as applying to questions of both law and fact) *with Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 192 (3d Cir. 1993) (holding that a legal issue was "beyond the scope of *Elliott*'s holding") *and Gjellum v. City of Birmingham, Ala.*, 829 F.2d 1056, 1068 (11th Cir. 1987) (noting that "the Court in *Elliott* carefully limited its holding to state agency *factfinding*").

Nevertheless, in light of *Elliott*'s silence on the preclusive effect of state administrative resolutions of legal questions, and *Astoria*'s broad support of administrative estoppel, the Court will give preclusive effect to legal conclusions to the extent afforded under Kentucky law.

In Kentucky, administrative decisions by state agencies acting in a judicial capacity are entitled to the same preclusive effect as judgments of courts. *Kentucky Bar Ass'n v. Harris*, 269 S.W.3d 414, 418 (Ky. 2008) (citing *Godbey v. University Hospital of the Albert B. Chandler Medical Center, Inc.,* 975 S.W.2d 104, 105 (Ky. Ct. App. 1998)); *see also Barnes v. McDowell*, 647 F. Supp. 1307, 1310–11 (E.D. Ky. 1986) (collecting cases) *rev'd on other grounds*, 848 F.2d 725 (6th Cir. 1988). Kentucky courts embrace the "general rule of issue preclusion" as applying to "question[s] of law or fact." *Alliance for Kentucky's Future, Inc. v. Envtl. & Pub. Prot. Cabinet*, 310 S.W.3d 681, 688 (Ky. Ct. App. 2008) (quoting Restatement (Second) of Judgments § 27); *Revenue Cabinet, Com. of Ky. v. Samani*, 757 S.W.2d 199, 201 (Ky. Ct. App. 1988) ("Regardless of [whether offensive or defensive issue preclusion] is utilized, if successful it will resolve the issue in an existing case by the resolution of that issue by prior adjudication, be it a question of law or fact.").

And so, contrary to its previous order, R. 275 at 15–16, this Court will do the same.

## II. Findings That Were Necessary to the Secretary's Final Order

Because the Order is a pretty bare-bones default judgment, the Court must work backwards to determine which issues the Order actually decided. That is, the Court must infer from the elements of the underlying claims and penalties the facts that logically *must* have been decided to support the judgment. *See* Wright & Miller, § 4420 ("Careful examination of the record often fails to show any explicit decision, particularly with a general verdict. Examination of the record often culminates instead in a process of inference, in which it is taken that an issue was actually decided if its decision was necessary to support the result reached on the record presented in the first action."). Kentucky has embraced this approach: "In a default judgment situation, the defaulting party admits only such allegations on the pleadings as are necessary to obtain the particular relief sought by the complaint." *Howard v. Fountain*, 749 S.W.2d 690, 692–93 (Ky. Ct. App. 1988) (citing *Wilson's Administrator v. Wilson*, 156 S.W. 832, 835 (Ky. 1941); *see also Hammonds v. Jones*, 122 S.W.2d 736, 739 (Ky. 1938) (concluding that a party's ownership of a tract of land had been adjudicated by a default judgment because that fact was the premise of his right to recover).

Working backwards means starting at the end—with the Order—to determine which issues are logically necessary to the violations and penalties the Order declared admitted. Because the defendants waived their rights to an administrative hearing, the Order declared "admitted" (1) the "fact of the violation cited in" the Notice of Noncompliance No. 43-2766; (2) the "proper issuance" of the Failure to Abate Cessation Order ("FTACO") No. 43-0212; and (3) the "recommended penalty assessment contained in the Conference Officer's report. R. 231-25 at 2 (the Final Order). In order to give preclusive effect to this default judgment,

9

the Court must ascertain the elements necessary to the Order's conclusions. And, as the Court previously noted, to the extent the Order adopted the findings of others in the DMRE, the same inferential approach also applies to their logically necessary findings. R. 275 at 12.

### A. Notice of Noncompliance No. 43-2766

The Order explicitly deemed admitted "the fact of the violation[s] cited in Notice of Noncompliance No. 43-2766." R. 231-25 at 40. The Notice describes four violations: (1) an off-permit slide in violation of 405 KAR 7:040, Section 2; (2) "activities [that] have resulted in conditions that can be reasonably expected to cause significant, imminent environmental harm to land, air or water" in violation of 405 KAR 7:040, Section 3; (3) "fail[ure] to maintain the approved 50' buffer zone to [Columbia's] gas line" in violation of 405 KAR 8:010; and (4) "fail[ure] to conduct mining activities in order to minimize damage to [Columbia's] gas line" in violation of 405 KAR 16:250. R. 231-21 at 4–5.

Under each regulation, the Notice briefly describes the corresponding violation. *Id.* (enclosing each description in a text box labeled "Description of violation and location"). For example, the Notice explained that the "[o]ff-permit slide occurred below the permit [area]" and that "[o]perator/permittee activities have resulted in conditions that can be reasonably expected to cause significant, imminent environmental harm to land, air or water resources." *Id.* at 4. The Notice also described the operator/permittee as "fail[ing] to follow [an] approved method of operation by failing to maintain the approved 50' buffer zone to" Columbia's gas line and "fail[ing] to conduct mining activities in order to minimize damage to" the gas line. *Id.* at 5. While these descriptions do not account for all of the elements of each regulation, they do identify the crux of each violation. As such, they are necessary to the facts of the violations themselves.

10

### B. Failure to Abate Cessation Order No. 43-0212

The Order also found the defendants to have admitted the "proper issuance of Failure to Abate Cessation Order No. 43-0212" ("the FTACO"). R. 231-25 at 40. FTACOs are issued when, as one might expect, a party cited for past wrongdoing has missed its deadline to remediate the wrong—that is, the party has failed to abate the violating conduct. R. 231-24 at 29. The FTACO notes that the defendants were instructed on February 3, 2012, to complete remedial work by April 29, 2013. *Id*. However, the FTACO continues, another inspection on May 6, 2013, "found that the remedial work ha[d] not been completed." *Id.* The FTACO concludes by repeating in detail the order to remediate. With the exception of the repeated order to remediate, each of these statements is necessary to the proper issuance of the FTACO. That is, if any of the three key elements—the initial order, the deadline, or the failed inspection—were omitted, the FTACO would not have been properly issued.

### C. Penalty Assessment in Conference Officer's Report

Finally, the Secretary's Order deemed admitted "[t]he recommended penalty assessment contained in the Conference Officer's report." R. 231-25 at 40. The Conference report itself "recommends that the proposed assessment be affirmed, in its entirety." R. 231-25 at 33. The assessment calculates the total fine by assigning point totals to different aspects of the defendants' behavior. R. 231-25 at 8–10. This approach is mandated by regulation. *See* 405 KAR 7:095 Section 3. The regulation requires the assessor to consider the (1) history of previous violations, (2) the seriousness of the current violations—including the probability of the violation, the extent of the damage, and the administrative requirements, (3) the degree of fault of the party cited, and (4) the speed with which the cited party returns to compliance. *Id.* The regulation assigns predetermined point totals to each of

11

these considerations. *Id.* The ultimate penalty, then, is the result of these various point totals. *Id.* at Section 4. Without any one of the assessed factors, the point total—and thus the fine itself—would be different. Accordingly, they are all necessary findings to the recommended penalty assessment.

## III. Elements of Columbia's Cause of Action That are Satisfied by the Findings

### A. Negligence Per Se

Columbia asks the Court to grant summary judgment on its negligence *per se* claims, arguing that all of the elements for all four negligence *per se* claims against the defendants are satisfied. Columbia alleges the same four regulatory violations that are described in the Notice of Noncompliance: (1) an off-permit slide in violation of 405 KAR 7:040, Section 2; (2) "activities [that] have resulted in conditions that can be reasonably expected to cause significant, imminent environmental harm to land, air or water" in violation of 405 KAR 7:040, Section 3; (3) "failing to maintain the approved 50' buffer zone to [Columbia's] gas line" in violation of 405 KAR 8:010; and (4) "fail[ure] to conduct mining activities in order to minimize damage to [Columbia's] gas line" in violation of 405 KAR 16:250.

In 1942, Kentucky codified the common law claim of negligence *per se*. *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 (Ky. 2011). The statute provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation" even if the violation already incurred a penalty. KRS § 446.070. Negligence *per se* generally requires six elements. The violated statute or regulation establishes (1) the standard of care, and the violation itself is (2) the breach. *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. Ct. App. 1997). This does not mean, however, that any person can bring a claim for negligence *per se* against the violator of any

statute. Instead, the plaintiff must be (3) within the class of persons the statute was designed to protect, and (4) the "injury suffered must be an event which the regulation was designed to prevent." *Shrout v. The TFE Grp.*, 161 S.W.3d 351, 355 (Ky. Ct. App. 2005). And of course, the plaintiff must still prove (5) causation and (6) injury. *Stivers v. Ellington*, 140 S.W.3d 599, 601 (Ky. Ct. App. 2004). Finally, when the claim involves an administrative regulation, rather than a statute, two additional requirements apply: The regulation must (7) be consistent with the enabling statute, and (8) must relate to public safety. *Straub*, 354 S.W.3d at 535.

Because the "fact[s] of the violation[s]" are deemed admitted, elements (1) and (2) are already satisfied as to all four violations. *See supra* Part II.A (citing R. 232-21 at 4–5).

Causation, element (5), is also satisfied as to all four violations. The assessment states that the "permittee damaged a twenty (20) inch gas line owned by Columbia." R. 231-25 at 10. This finding—that the defendants *actually damaged* the gas line—requires a causal relationship between the defendants' "breach[] of th[e] waiver by back stacking excess spoil material along a bench area on top of the gas line" and the actual damage. *Id.* The defendants argue that the slide had other causes and the inspector did not try and was not qualified to determine actual fault. *See, e.g.*, R. 253 at 5. The defendants were free to make these arguments at the administrative hearing, but they chose not to. Here, as a result, the arguments are precluded. Because the defendants "admitted" to damaging the gas line, the causation element is satisfied. In the same way, the Order satisfied the injury element as well.

Determining whether the Order's findings satisfy the remaining elements requires further discussion. Ultimately, the Court concludes that the Order establishes all the requirements of negligence *per se* for each of the four violations.

### i. Violation 1: 405 KAR 7:040, Section 2

The first regulation the defendants violated prohibits discarding any natural materials like "earth, soil, [or] dirt" in a way that could slide beyond the permitted area. 405 KAR 7:040, Section 2 ("Section 2"). The owners of adjacent property seem, unavoidably, within the class of persons the regulation was designed to protect. The text explicitly identifies the event the regulation seeks to prevent: landslides onto adjacent property. Accordingly, the third and fourth elements are satisfied—the plaintiff is within the class of persons the statute was designed to protect, and the injury suffered is the type the regulation was designed to prevent. *Id.* The regulation is also consistent with its enabling statutes—one of the regulation's statutory authorities imposes the same burdens on permittees as discussed in Section 2. *See* KRS § 350.090(4). Finally, the regulation undoubtedly relates to public safety: The Declaration of Legislative Policy for Chapter 350 notes that "unregulated surface coal mining operations . . . destroy or impair the property rights of citizens, create fire hazards, and in general create hazards dangerous to life and property, so as to constitute an imminent and inordinate peril." KRS § 350.020.

### ii. Violation 2: 405 KAR 7:040, Section 3

The Notice also cited the defendants for creating "conditions that can be reasonably expected to cause significant, imminent environmental harm to land, air, or water resources" in violation of 405 KAR 7:040, Section 3 ("Section 3"). R. 231-21 at 4. Again, adjacent landowners are well within the class of people contemplated by the duty to avoid causing

14

such harm. The definition section of Title 405 explains that "[a]n environmental harm is an adverse impact on land, air, or water resources, including but not limited to plant and animal life." 405 KAR 1:010, Section 1(52)(a). Covering wide swaths of land with a menagerie of mining debris has an "adverse impact" on the land's plant and animal life. A landslide causing such environmental harm is contemplated in the enabling statute and relates directly to public safety: "[I]t is the purpose of this chapter to provide such regulation . . . [of] coal mining operations to . . . prevent injurious effects on the people and resources of the Commonwealth." KRS § 350.020.

### iii. Violation 3: 405 KAR 8:010, Section 2

The defendants also violated a regulation that requires coal mining and reclamation operators to "comply with the terms and conditions of the[ir] permit." 405 KAR 8:010, Section 2(3). The permit required the defendants to conduct their operations "in accordance with the terms of the written authorization from Columbia." R. 306-2 at 2. That agreement imposed a buffer of 50 feet around Columbia's gas line. R. 231-21 at 5. The parties to such an agreement surely fall within the class of persons contemplated by the requirement to comply with the permit. Similarly, the event of a slide that disturbs the gas line is precisely the sort that the regulation seeks to prevent. As with the defendants' first two regulatory violations, an off-permit landslide—particularly one that disrupts a valuable gas line—falls squarely within the "general . . . hazards dangerous to life and property" contemplated by the enabling statute. *See* KRS § 350.020.

### iv. Violation 4: 405 KAR 16:250, Section 2

By penetrating the agreed upon buffer zone around the gas line, the defendants failed to "minimize damage, destruction, or disruption of services provided by . . . gas . . .

15

pipelines" that run "through the permit area, unless otherwise approved by the owner of those facilities." 405 KAR 16:250, Section 2(2). Columbia—as "the owner of those facilities"—clearly falls within the contemplated class of persons. *Id.* The regulation also explicitly identifies "disruption" of the gas line as the event it is designed to prevent. *Id.* The enabling statute authorizes regulations "to accomplish the purposes of this chapter." *See* KRS § 350.028. The purposes of the chapter include "minimize[ing] or prevent[ing] injurious effects on the people and resources of the Commonwealth." KRS § 350.020.

### B. Trespass

The Secretary's findings, inferred from the Order, satisfy all three elements of negligent trespass. Under Kentucky law, a plaintiff asserting a negligent trespass claim must prove the following: (1) the defendant breached a duty of care; (2) the defendant caused a thing to enter the plaintiff's land; and (3) that thing's presence on the land caused actual harm. *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 620 (Ky. Ct. App. 2003) (quoting Restatement (Second) of Torts § 165).

The first element—breaching a duty of care—is satisfied by the defendants' violation of 405 KAR 7:040, which prohibits the stacking of materials in such a way that they could slide beyond the permitted area. *See supra* Part III.A.i; *Alderman*, 957 S.W.2d at 267 (holding that a regulatory violation breaches a duty of care when the plaintiff falls within the protected class of persons, and the injury suffered is an event the regulation was designed to prevent).

The second element—causing a thing to enter the land—is similarly established by the Secretary's findings. The defendants violated their agreement not to breach "the fifty [] foot buffer zone with no disturbance for the gas line." R. 231-25 at 10. They breached this

agreement "by back stacking excess spoil material along a bench area *on top of the gas line*." *Id.*

Finally, the findings established that penetration of the plaintiff's land caused actual harm: "The permittee damaged a twenty (20) inch gas line owned by Columbia." *Id.* The defendants' degree of fault for this damage was "recklessness"—they violated the easement by stacking the excess materials "on top of the gas line." *Id.*

Even if the findings did not satisfy negligent trespass, liability for intentional trespass attaches to someone who "fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) of Torts § 158. While no Kentucky case has explicitly adopted this provision, Kentucky "generally follow[s]" the Restatement of Torts. *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 772 (6th Cir. 2009). On February 13, 2012, the Notice of Noncompliance required the defendants' to remove the excess materials from Columbia's land by March 3, 2012. R. 231-21 at 4. As of May 6, 2013, "the remedial work ha[d still] not been completed," R. 231-24 at 29—a fact admitted by the defendants. R. 293 at 5.

On either theory, the preclusive findings satisfy the elements for trespass.

### C. Nuisance

Columbia seeks to preclude only the first of the two elements of its permanent nuisance claim. Kentucky's codification of the common law claim requires that the defendants' use of property (1) "unreasonably interferes with [the plaintiff's] use and enjoyment" of the property, and (2) "thereby causes the fair market value of the [Plaintiff's] property . . . to be materially reduced. *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 625 (Ky. Ct. App. 2003) (quoting KRS 411.530(2)). Columbia concedes that further adjudication

17

is required to determine whether the defendants caused a reduction in the land's fair market value. R. 266 at 13. The defendants' interference with Columbia's use of its land was unreasonable because it breached their duty of care. *See supra* Part III.A, III.B. That the defendants damaged the gas line, R. 231-25 at 10, and neglected to remediate the damage for over a year, R. 231-24 at 29—during which time Columbia took the gas line out of service—demonstrates the unreasonableness of the interference. *Wilhite*, 143 S.W.3d at 625; *Cf. George v. Standard Slag Co.*, 431 S.W.2d 711, 715 (Ky. 1968) (overruled on other grounds by *Se. Coal Co., Inc. v. Combs*, 760 S.W.2d 83 (Ky. 1988)).

This unreasonable interference justifies damages, *Smith v. Carbide & Chemicals Corp.*, 226 S.W.3d 52, 57 (Ky. 2007), though the extent of the damages requires further adjudication.

### D. Negligence

Columbia seeks to preclude litigation of only the duty and breach of duty elements of its negligence claim. R. 266 at 14. Because the Court has already found the Secretary's findings to preclude Columbia's negligence *per se* claims, *see supra* Part III.A, the duty and breach of duty elements of its negligence claim are satisfied as well. *See Alderman*, 957 S.W.2d at 267.

### E. Punitive Damages

Columbia says that it "may – or may not – seek an instruction on punitive damages" but still seems to ask the Court to acknowledge that the defendants' "conduct involve[d] 'a greater degree of fault than negligence.'" R. 266 at 14 (quoting 405 KAR 7:095). Because Article III bars the Court from issuing advisory opinions, *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011), and Columbia has not yet decided if it

will seek punitive damages, the Court will not address the defendants' possibly heightened culpability more than it already has. *See supra* Part II.C. This will ultimately be up to the jury to decide.

## CONCLUSION

The defendants had a full opportunity to oppose Columbia's claims before the DMRE. They chose to waive that opportunity and, as a result, they lost. To the extent that the issues decided there match those claimed here, the defendants lose again. Columbia's motion asks the Court to grant summary judgment on its claims for negligence *per se*, trespass, the first element of nuisance, and the first two elements of its common law claim for negligence. Because each of the required elements is satisfied by findings necessary to the DMRE's Final Order, the Court will grant Columbia's motion as to those claims. Such battles, won and lost alike, should only be fought once.

For the reasons stated, it is accordingly **ORDERED** that:

(1) Columbia's Motion for Partial Summary Judgment, R. 234, is **GRANTED IN PART** as to Columbia's claims for negligence *per se*, trespass, the first element of nuisance, and the first two elements of its common law claim for negligence.

(2) The motion, R. 234, is **DENIED IN PART** as to punitive damages.

This the 17th day of September, 2014.



Signed By:
*Amul R. Thapar*
United States District Judge